# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-11-236-HE |
| | ) | |
| JUSTIN DEAN TYNER, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND SENTENCING MEMORANDUM

MATTHEW C. KANE, OBA NO. 19502
RYAN WHALEY COLDIRON SHANDY PLLC
900 Robinson Renaissance
119 North Robinson
Oklahoma City, Oklahoma 73102
Telephone:   (405) 239-6040
Facsimile:    (405) 239-6766

ATTORNEY FOR DEFENDANT

Mr. Tyner is a drug addict. He has a long history of criminal activity, almost exclusively driven by his addiction. Mr. Tyner knows he has a very serious problem and has caused significant financial and emotional difficulties for innocent victims. He sincerely regrets the hardship he has caused and understands that he must serve time for his wrongful conduct. Mr. Tyner wants to get straight, not only for himself, but for his infant son. Having grown up without parental support, he is all too aware of the potential consequences of such an upbringing – his sole desire is to break the cycle with his son.

Mr. Tyner has done everything possible to accept responsibility for his actions. He has admitted his guilt in this case, spoken with investigators, and consented to the search which provided much of the evidence in the case. He pled guilty to uttering a forged instrument and possessing a false driver's license in Cleveland County and was sentenced to ten years incarceration. He pled guilty to two separate charges of attempting to obtain money under false pretenses and was sentenced to five years on each case, to run concurrently with the other sentences. The attempts to pass counterfeit checks – the actions addressed in these prior state cases – are included in the relevant conduct here. As a result, Mr. Tyner requests the Court: (1) determine that Mr. Tyner, absent a departure, should be sentenced at the low end of his guideline range (51 months); (2) order that Mr. Tyner's sentence run concurrently with his current state sentences; and (3) depart from the guidelines to give Mr. Tyner credit for time served on the current state sentences (reducing his instant sentence to 39 months to run concurrently with his ten year and concurrent five year state sentences).

## I.     JUDICIAL DISCRETION AND THE PROCEDURAL ASPECTS OF SENTENCING

The Court has broad discretion in determining the appropriate sentence. Because the district court "considering what sentence to impose…does not have the benefit of any prior judicial determination regarding the particular circumstances of the offender and the offense," *United States v. Angel-Guzman,* 506 F.3d 1007, 1015-16 (10th Cir. 2007), the Tenth Circuit will limit its review to an examination of the district's "application of the 18 U.S.C. § 3553(a) factors for substantive reasonableness, utilizing the abuse-of-discretion standard." *United States v. Bullcoming,* 579 F.3d 1200, 1206 (10th Cir. 2009) (upholding a sentence doubling the highest guideline recommendation, without discussion, since abuse of discretion could occur only if the district court "render[ed] a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable").

As a matter of procedural regularity, the first step in any sentencing decision is the determination of a correctly calculated Guidelines sentencing range. *Gall v. U.S.,* 128 S. Ct. 586, 169 L.Ed.2d 445 (2007). However, "[a] district judge may not simply rest on the authority of the Sentencing Guidelines, but must weigh all relevant § 3553(a) factors."[1] *Id.* In "impos[ing] a sentence sufficient, *but not greater than necessary* to comply with the purposes [of sentencing]," sentencing courts to consider the following factors, among others: (1) "the nature and circumstances of the offense and the history and

---

[1] *U.S. v. Conlan,* 500 F.3d 1167, 1169 (10th Cir. 2007); *U.S. v. Arrevalo-Olvera,* 495 F.3d 1211, 1213 (10th Cir. 2007); *see also Kimbrough v. United States,* 128 S. Ct. 558, 596-597 (2007) (a district court "may not presume that the Guidelines range is reasonable."). As recognized by Judge Nancy Gertner, "The Guidelines' Introduction recognized that they were not comprehensive, but rather had gaps intended to be filled in by judges' power to depart." 3 Harv. Law & Pol'y Rev. 261, 267-268 (2009).

characteristics of the defendant"; (2) "the kinds of sentences available"; and (3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[2]  18 U.S.C. § 3553(a).  Moreover, in determining whether and to what extent imprisonment is appropriate based on the § 3553(a) factors, the Court is required to "recogniz[e] that <u>imprisonment is *not* an appropriate means of promoting correction and rehabilitation.</u>"  18 U.S.C. § 3582 (emphasis added).

## II. DEFENDANT'S SENTENCE SHOULD RUN CONCURRENTLY WITH HIS UNDISCHARGED STATE SENTENCE.

While a variety of factors influence the determination of a proper sentence, the most important determination with regard to Mr. Tyner is that the federal sentence runs concurrently with the undischarged state sentences.  One commentator, who served as Special Counsel to the United States Sentencing Commission and participated in drafting staff input to the Commission concerning § 5G1.3, explained the issue as follows:

> Whether a sentence should be imposed to run concurrently with or consecutively to an undischarged term of imprisonment is one of the most difficult issues to address in formulating sentencing guidelines. The problem is especially vexing because questions of unwarranted disparity

---

[2] Indeed, under 18 U.S.C. § 3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of[the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added).  There may be a range of possible outcomes that the law and facts can fairly support. "[T]here are perhaps few arenas where the range of rationally permissible choices is as large as it is in sentencing, a task calling on a district court's unique familiarity with the facts and circumstances of a case and its judgment in balancing a host of incommensurate and disparate considerations, ranging from the degree of the defendant's cooperation and remorse to the need for deterring potential future offenders." *U.S. v. McComb,* 519 F.3d 1049, 1053-54 (10th Cir. 2007*).*

> arise whenever unrelated crimes committed by a single defendant are prosecuted separately when they might have been prosecuted together.
>
> ***
>
> The Commission's approach to the issue of concurrent/consecutive sentencing must inevitably be determined by its treatment of issues relating to other criminal conduct generally. Once it decides, for example, how to treat a defendant who is prosecuted and convicted of three bank robberies in one federal district, there is no reason why the same rule should not apply to (1) the defendant who commits one bank robbery in District A and two robberies in District B, (2) the defendant who is prosecuted for one robbery by the United States Attorney and two robberies by a state prosecutor, or (3) the defendant who is initially prosecuted and convicted for one robbery and later prosecuted by the same United States Attorney for two more. These defendants may be equally culpable, assuming that their crimes were all the same. Any departure from treating them uniformly will be inconsistent with the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Abraham L. Clott, "How to Sentence a Defendant Prosecuted Separately for Factually Unrelated Crimes: An Explanation and Defense of § 5G1.3(c)," 7 Fed. Sent. Rptr. 214 (Jan./Feb. 1995). In the instant circumstances, the sentences must be run concurrently to avoid penalizing Mr. Tyner for accepting responsibility in the state court system prior to being charged by the government.

While U.S.S.G. § 5G1.3 serves as the appropriate starting point, it also incorporates 18 U.S.C. § 3584, which provides the Court with discretion to run sentences consecutively or concurrently. In making its determination, under the statute, and (by reference) the guideline provision, the Court is directed to consider the factors set forth in section 3553(a).

### A. *The Guidelines Support a Concurrent Sentence.*

U.S.S.G. § 5G1.3 provides:

(a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

(b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:

   (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

   (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

(c) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

Mr. Tyner does not fall into subsection (a) because he was not serving a sentence when the offense was committed, nor had he been sentenced but had yet to begin service of that sentence. *See* PSR, Response to Objection to Paragraph 126. Subsection (b) applies where the sentence was for prior relevant conduct that was the basis for an increase in the offense level for the instant offense and calls for the imposition of a concurrent sentence and adjustment for time served. Mr. Tyner's prior acts, for which he is currently serving three state sentences, were clearly part of the relevant conduct. *See*

5

PSR, ¶¶ 71-73 and 11a.  In each case, he cashed or attempted to cash a counterfeit check. *Id.*   However, Mr. Tyner may technically fall outside the parameters of subsection (b) because inclusion or exclusion of these three acts in the relevant conduct does not alone alter Mr. Tyner's offense level.[3]

The rationale for requiring the relevant conduct to increase the guideline range remains elusive.[4]  However, it is clear that the basic principles underlying the application of subsection (b) are relevant here. "The purpose of § 5G1.1 is to coordinate punishments so that total punishment would approximate what would have been imposed had all of the sentences been imposed at the same time."  *United States v. Hovey,* 33 Fed. Appx. 397, 398 (10th Cir. 2002) (unpublished), *citing Witte v. United States,* 515 U.S. 389, 404-05, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) ("the guidelines attempt[] to achieve some coordination of sentences…with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences for the different offense been imposed at the same time (i.e., had all of the offenses been prosecuted in a single

---

[3] This is a simplistic assumption which does not necessarily address all potentially relevant issues.  For instance, some act had to be the transaction which led to an increase in the enhancement, and the state-sentenced transaction could well serve as the act that pushed Mr. Tyner to the next level.  This points to a larger issue – that the conduct as a whole, *i.e.,* passing or attempting to pass counterfeit checks, is clearly a significant basis for an increase in offense level.  However, given the Court's clear authorization to exercise its discretion under Subsection (c), the intent of Subsection (b) can be fulfilled without resolving these technical issues.

[4] Prior to the instant language, § 5G1.3(b) required that the relevant conduct be "fully taken into account" in calculating the instant offense level.  This language was the subject of significant disagreement.  The "Reason for Amendment" provided by the U.S.S.C. with the 2003 Amendment merely provides: "By clarifying the application of subsection (b), this amendment addresses conflicting litigation regarding the meaning of 'fully taken into account.'"

proceeding)"). "The intended purpose of § 5G1.3(b) is to effectively 'credit[] for guidelines purposes' defendants who have already served time – generally in another jurisdiction – for the same conduct or course of conduct.'" *United States v. Johnson,* 40 F.3d 1079, 1082 (10th Cir. 1994), *quoting in part United States v. Flowers,* 13 F.3d 395, 397 (11th Cir. 1994); *see also, United States v. Warren,* 240 Fed.Appx. 809, 813 (10th Cir. 2007); *United States v. Contreras,* 210 F.3d 1151, 1153 (10th Cir. 2000) ("U.S.S.G. § 5G1.3(b)'s central aim is to ensure no defendant is punished twice for the same crime.").

Regardless, as part of the "[s]ignificant safeguards built into the Sentencing Guidelines [t]o protect petitioner against having the length of his sentence multiplied by duplicative consideration of the same criminal conduct," *Witte,* 515 U.S. at 405, subsection (c) specifically provides that, if the other provisions do not apply, "the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." To ensure the total punishment will approximate what would have been imposed had all of the sentences been imposed at the same time, the sentence must be run concurrently. The guideline policies plainly indicate and allow for the Court to impose a concurrent sentence here to achieve a reasonable punishment for the instant offense and avoid significantly penalizing Mr. Tyner merely for accepting responsibility in his state cases.

> **B.    *Statutory Considerations Support a Concurrent Sentence.***

Title 18 U.S.C. § 3584(a) provides the Court with discretion to determine whether offenses should run concurrently or consecutively. Section 3584(b) provides that "[t]he

7

court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." As discussed in the following sections, a concurrent sentence is appropriate in light of the factors set out in § 3553(a).

### 1. *Nature and Circumstances of the Offense*

Mr. Tyner has a serious drug addiction. To support his $300 to $400 a day habit, *see* PSR, ¶ 96, Mr. Tyner and others stole checks from mailboxes and created counterfeit checks and false identifications to obtain funds for drugs. Mr. Tyner was part of the scheme from mid-November 2010 until December 28, 2010, when he was arrested. *Id.* at ¶¶ 11a-27. While Mr. Tyner was involved, the scheme resulted in actual losses of $34,016.32. *Id.* at ¶ 39.[5]

### 2. *History and Characteristics of Mr. Tyner*

At 32 years-old, Mr. Tyner has had a lifetime's worth of illegal behavior, fueled almost exclusively by his drug addiction. He fully accepts responsibility for his conduct and has done everything he can to make things right. *Id.*[6] He has admitted his role in the

---

[5] The calculation of the intended loss is problematic, as discussed in Mr. Tyner's objections to the presentence report and in light of the recent holding in *U.S. v. Manatau,* 647 F.3d 1048, 1056-57 (10th Cir. 2011); however, this calculation is not a factor as it will not change the guideline calculation.

[6] Even prior to *Booker*, (*U.S. v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005))*,* the Tenth Circuit recognized that a variance was appropriate "for acceptance of responsibility to be so exceptional that it is 'to a degree' not considered by USSG § 3E1.1." *U.S. v. Gaither,* 1 F.3d 1040, 1043 (10th Cir. 1993), *citing United States v. Smith,* 930 F.2d 1450, 1454 (10th Cir.) *cert. denied,* 502 U.S. 879, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991); *United States v. White,* 893 F.2d 276, 278 (10th Cir.1990); *see also, U.S. v. Garlich,* 951 F.2d 161, 164 (8th Cir. 1991) (one element for determining if acceptance of responsibility is extraordinary is "the extent and timing of [the defendant's] restitution.");

scheme to agents, provided information regarding other participants, and consented to a search of a safe containing evidence directly relevant to these proceedings. *Id.* at ¶¶ 34-37. He has pled guilty, not only in this case, but in the three related cases in Oklahoma and Cleveland County. PSR at ¶¶ 71-73. In short, Mr. Tyner has done everything that could be asked of him to make things right.

From the time he was a toddler, Mr. Tyner's biological parents were both incarcerated. PSR at ¶ 83. His aunt and uncle adopted him, only to leave him to his own devices while fighting their own demons. *Id.* He was exposed to drugs through his brother and alcohol through his adoptive father at an early age. *Id.* Mr. Tyner first used marijuana at age eight and continued on an almost daily basis until 2002. *Id.* at ¶ 92. He was getting drunk weekly by the time he was ten years old. *Id.* at ¶ 91. When he was thirteen, Mr. Tyner first used methamphetamine and by the time he was seventeen, he was using it daily. *Id.* at ¶ 96. Drugs have disrupted every phase of his life, from education (he received a GED while previously incarcerated), to employment (no specialized skills), to his interpersonal relationships. Mr. Tyner is a drug addict and will have to deal with his addiction for the rest of his life.

Mr. Tyner wants to change and has every reason to do so. For the first time in his life, he has someone depending on him. Because of his newborn son, he has a reason to get off drugs. PSR at ¶ 97. He is keenly aware of the difficulties of growing up with incarcerated parents and he wants to break the cycle with his son. *Id.* He believes he

---

*U.S. v. Hairston,* 96 F.3d 102, 109 (4th Cir. 1996); *U.S. v. Hendrickson,* 22 F.3d 170, 176 (7th Cir. 1994). Regardless of whether a departure is appropriate on this basis, it should certainly serve as a basis for sentencing Mr. Tyner to the bottom of the guidelines range.

would benefit greatly from substance abuse treatment, as well as job training. *Id.* at ¶¶ 97 and 100. His biological mother, who struggled herself with drug addiction and was incarcerated for an extended period, has been clean for some time. She is back in Mr. Tyner's life and serves as an example of someone who has come out of the system a changed person and wants Mr. Tyner to do the same. She will support Mr. Tyner with each phase of such recovery.

### 3. *The Applicable Sentencing Range Under the Guidelines*

Mr. Tyner does not dispute the guideline calculations contained in the *PSR,* ¶¶ 62 and 74. Consequently, the applicable guideline range is 51 to 60 months.

### 4. *Objectives of Sentencing*

i. Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense.

(a) <u>Proportionate to the Crime Committed.</u>

The concept of *lex talionis* is one of the key objectives of sentencing under 18 U.S.C. § 3553(a)(2). Under this "eye for an eye" theory, "the extent of punishment is required to neatly fit the crime. *See Blarek,* 7 F.Supp.2d at 202. The issue then becomes what punishment is appropriate for a particular crime and how that punishment reflects the defendant's culpability, particularly where there is more than one defendant involved. Thus, proportionality between severity of the crime and period of incarceration, if any, is a central concept to sentencing jurisprudence. 18 U.S.C. § 3553(a)(2)(A).

As previously discussed, the undischarged state sentence is predicated on the passing or attempting to pass counterfeit checks. The federal sentence to be imposed is

10

for conspiracy to commit the scheme which includes the three acts previously sentenced as overt acts. The guideline range calculation indicates that a sentence of 53 to 60 months is an appropriate sentence for Mr. Tyner's misconduct in the instant case. Requiring the sentence to run concurrently with the ten-year state sentence results in a sentence "blessed" by the guideline calculation. Conversely, a consecutive sentence will result in an overall sentence grossly disproportionate to the guideline range.

(b) <u>Proportionate Relative to any Co-Defendant.</u>

The sentence must also be proportionate to the sentences received by other defendants. Here, Mr. Sanders, Mr. Tyner's co-defendant, pled guilty to the same count. Like Mr. Tyner, his involvement in the conspiracy was an effort to obtain money for drugs.[7] Like Mr. Tyner, he has had a number of convictions for prior criminal conduct. Unlike Mr. Tyner, however, it does not appear that he is currently serving a state sentence or even has a state case pending for the underlying conduct, as the only case Mr. Tyner has identified involving relevant conduct was dismissed. *See State of Oklahoma v. Jason Wade Sanders,* CF-2011-72 (closed May 27, 2011).[8] It would be grossly disproportionate for Mr. Tyner to be sentenced to consecutive sentences (as a result of having previously accepted responsibility in his state cases), while Mr. Sanders received only the federal sentence for similar conduct.

---

[7] In fact, Mr. Sanders' role in the conspiracy continued for two more months after Mr. Tyner had been incarcerated, resulting in significant additional losses to victims and presumably raising his offense level under the guidelines.

[8] Relevant state and federal case information relating to Mr. Sanders and others discussed herein are attached in the sequence discussed in Exhibit 1 hereto.

The Court should also consider the sentences recently imposed by Judge David L. Russell in *United States v. Amber Nicole Meade,* 11-CR-207-R, a substantially similar counterfeit identification/counterfeit check case. In those proceedings, apparently involving an actual loss amount of $23,561.07 (restitution of $32,142.99 was ordered) and intended losses of $93,815.22, the defendants received sentences of 46 months and 30 months. Importantly, Ms. Meade had previously pled to a related state offense (Oklahoma County, CF-2010-6714) (forgery in the second degree as well as concealing stolen property) and had previously been sentenced on those charges to a period of two years of incarceration.[9] In the Judgment in a Criminal Case, Judge Russell ordered that Ms. Meade's sentence "run concurrently with any other sentence presently imposed." Likewise, Mr. Tyner's sentence should run concurrently with his state incarceration.

      ii.    Need for Sentence to Afford Adequate Deterrence to Criminal Conduct

"The purpose of [punishment] is not to cancel the crime…but to bring the criminal and all who witness his punishment in the future to complete renunciation of such criminality." *United States v. Barker,* 771 F.2d 1362, 1368, n. 12, 13 (9th Cir. 1985). Mr. Tyner has already been sentenced to a ten-year period of incarceration and two additional concurrent sentences of five years. Clearly, a ten-year sentence will deter any member of the public who would contemplate committing such a crime. It seems unlikely that any

---

[9] In a prior proceeding (CF-2001-1451, Oklahoma County), Ms. Meade had also been sentenced to two years incarceration for unauthorized use of a vehicle. It is unclear what served as a basis for the concurrent sentence in the federal case when this state sentence of incarceration does not appear to be part of any related activity addressed in the federal case. This is not an issue here, as the acts in the state cases are specifically included in the relevant conduct here.

consecutive sentence imposed by this Court would have a significant effect on those contemplating a similar criminal act beyond the deterrent effect of the prior sentences.

                iii.    Need for Sentence to Protect the Public from Further Crimes of Defendant.

Another key sentencing objective is the importance of the need to protect the public from further crimes by the defendant. 18 U.S.C. § 3553(a)(2)(C); *Shaw,* 471 F.3d at 1139. Mr. Tyner knows he was wrong and that he needs significant intervention to overcome his drug addiction. Mr. Tyner is currently serving a ten-year sentence, as well as two concurrent five-year sentences. He fully understands that incarceration is appropriate and necessary given his addiction and related conduct. However, given the undischarged sentences, the public will be protected with a concurrent sentence.

                iv.    Need for Educational or Vocational Training, Medical Care or Other Correctional Treatment.

The sentence imposed must also contemplate how any treatment can be provided in the most effective manner. 18 U.S.C. § 3553(a)(2)(D). Mr. Tyner is fully aware of his drug addiction and the damaging effects it has had on him and those around him. He fully acknowledges that he needs treatment and is extremely hopeful that he will be able to receive such treatment during his period of incarceration.

## III.    PRACTICAL CONSIDERATIONS

### A.    *Need for Departure to Reflect Pertinent Policy Objectives.*

As discussed above, principles of proportionality indicate the need for a concurrent sentence. Additionally, a concurrent sentence is necessary to ensure that Mr. Tyner is not disadvantaged because the state and federal crimes were charged and will be

sentenced separately. While 5G1.3(b) specifically includes an adjustment for this purpose, 5G1.3(c), without explanation, does not. While the Court can order the sentences to be run concurrently under the guidelines as a matter of judicial discretion under 5G1.3(c), <u>a departure is necessary (and is specifically contemplated by the guidelines)</u> to reflect the time already served by Mr. Tyner on the state sentence. U.S.S.G. § 5G1.3, application note 3(E) provides that a "downward departure may be warranted to ensure that the combined punishment is not increased unduly by the fortuity and timing of separate prosecutions and sentencings." Thus, Mr. Tyner respectfully requests a departure to reflect the time served on his state sentences (or, alternatively a significant portion thereof) since December 28, 2011. Absent a departure, Mr. Tyner will have served more than a year for the relevant underlying conduct and been incarcerated for seven and a half months longer than his co-defendant simply because his state cases came first. Such a result does not reflect the guidelines' intent that the penalty reflects the crime (regardless of the fortuitous nature of the timing of the sentences) nor the proportionality that should exist between the sentences of the related defendants.

### B.    *Content of Judgment & Commitment Order*

Because "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently," 18 U.S.C. § 3584(a), it is essential for the Court's Judgment & Commitment Order/Judgment in a Criminal Case (J&C) to clearly state its intent that the sentences run concurrently. The BOP has recognized several phrases which a court may use to make clear its intent:

- "Said sentence to run concurrently with the state sentence the defendant is presently serving."

- "Sentence to run concurrently with sentence imposed under Docket No. [ ], [ ] County Court, on [ ]."

- "Sentence is hereby ordered to run concurrently with any other sentence presently being served."

PS 5160.05(9)(b)(1) (attached as Exhibit 2). As noted above, in *Meade,* the court provided that the sentence was to "run concurrently with any other sentence presently imposed." In addition, Mr. Tyner requests that the Court consider stating in the J&C that the designated state facility is the recommended place of incarceration. PS 5160.05(9)(b)(2). The BOP, in turn, will implement such order or recommendation, ordinarily by designating the state facility as the place to serve the federal sentence. PS 5160.05(c), *citing U.S. v. Hardesty,* 958 F.2d 910 (9th Cir. 1992).

## CONCLUSION

For the reasons set forth above, Mr. Tyner requests the imposition of a sentence on the low end of the guideline range, reduced by time served on the related state sentences – resulting in a sentence of 39 months – to run concurrently with the state sentences.

s/Matthew C. Kane
MATTHEW C. KANE, OBA NO. 19502
RYAN WHALEY COLDIRON SHANDY PLLC
900 Robinson Renaissance
119 North Robinson
Oklahoma City, Oklahoma 73102
Telephone:   (405) 239-60403
Facsimile:   (405) 239-6766
dwebber@ryanwhaley.com

ATTORNEY FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2011, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Court of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Dan Lennington
United States District Attorney's Office
210 Park Avenue, Suite 400
Oklahoma City, OK  73102
daniel.lennington@usdoj.gov

                                            s/Matthew C. Kane
                                            MATTHEW C. KANE